# IN THE SUPREME COURT OF TEXAS

════════════
No. 11-0057
════════════

ROBERT V. BUCK AND QUEEN ISABELLA DEVELOPMENT JOINT VENTURE,
PETITIONERS,

v.

G. J. PALMER, JR., RESPONDENT

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════

## PER CURIAM

In this case, we must decide whether mere statements of intent to discontinue a joint venture cause automatic dissolution of the venture as a matter of law. We hold that statements expressing an intent to dissolve a partnership at some future time do not necessarily constitute an immediate dissolution of the partnership as a matter of law, and that the court of appeals erred in affirming summary judgment on that basis. Accordingly, without hearing oral argument pursuant to Texas Rule of Appellate Procedure 59.1, we reverse the court of appeals' judgment and remand the case to that court. We also hold that the court of appeals did not err in determining that Buck waived any right he might have had to disqualify Palmer's attorney by failing to timely move to disqualify her.

Robert Buck, G.J. Palmer, John Thobe, and 1629 Service Corporation ("1629") created the Queen Isabella Development Joint Venture to build a marina and yacht club in Port Isabel, Texas.

By the time relevant to this case, Buck and Palmer each had a twenty percent interest and 1629 had a sixty percent interest in the venture. The venture borrowed over $7 million, guaranteed by Buck and Palmer. When the venture failed after a series of major storms damaged the marina, waves of litigation ensued as creditors sought repayment. The litigation culminated in a settlement wherein the venture's outstanding debt was reduced to a $600,000 note and 1629's interest in the venture was transferred to Palmer, giving him an eighty percent interest. Since the settlement, the value of the property has risen to a recent estimated value of around $4 million.

The current dispute involves the remaining twenty percent interest in the venture. In 1997, Palmer sued Buck for breach of an oral agreement, alleging that Buck promised to transfer his remaining interest in the venture to Palmer in exchange for freedom from the venture's indebtedness following the earlier settlement. Buck denied the existence of this contract, sought a declaration that he was still the owner of an interest in the venture, and requested that the trial court determine the fair value of his interest. Palmer filed no-evidence and traditional summary judgment motions on the basis that, even absent the oral contract, Buck relinquished his interest when he allegedly expressed his will to dissolve the venture on various occasion between 1993 and 1995. The principal evidence of dissolution is a letter dated June 16, 1995, in which Buck wrote to Palmer, "I have no desire to embark into any QID land development scenario with you."[1] Thus, Palmer argued, Buck is only entitled to a distribution according to the value of the venture at that time—a value that was no greater than zero in light of the venture's indebtedness. Palmer also filed a separate summary

---

[1] Palmer also points to other statements by Buck expressing a desire to discontinue the joint venture at some unspecified time in the future as conclusive evidence of dissolution.

judgment motion on statute of limitations grounds. Buck responded to these motions, alleging that he at no time intended to relinquish his interest in the joint venture and is entitled to a distribution of his share of the venture according to its current value. Buck had previously moved to disqualify Palmer's lawyer and had sought to compel discovery of Palmer's financial statements.

The trial court denied Buck's motions and granted Palmer's summary judgment motions. Without reaching the limitations issue, the court of appeals affirmed, reasoning that Buck's communications to Palmer in 1995 are conclusive evidence of dissolution of the joint venture and warranted summary judgment on the basis that Buck lacks standing to assert any claims to the venture. ___ S.W.3d ___. We disagree.

We review a trial court's grant of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We must determine whether there is more than a scintilla of probative evidence raising genuine issues of material fact. *See* Tex. R. Civ. P. 166a(c), (I).[2] We must review the record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). Undisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence. *See id.* at 814.

---

[2] Both parties brought forth summary judgment evidence in the context of this hybrid no-evidence and traditional motion, so the differing burdens of the two forms of summary judgment motion are of no import here. The ultimate question is simply whether a fact issue exists.

The applicable law in this case, the Texas Uniform Partnership Act,[3] provides that dissolution is caused "by the express will" of any partner ceasing association with the continued operation of the business. TUPA § 31. Palmer contends that the June 1995 letter conclusively established the partnership's dissolution as of that date. Palmer cites a single Texas court of appeals case, *Woodruff v. Bryant*, 558 S.W.2d 535, 539–40 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.), in support of the proposition that dissolution occurs "automatically" upon a partner's expression of intent to dissolve. But in every Texas case cited by Palmer or the court of appeals, the court only held that the mere expression of will to dissolve is *legally sufficient* evidence of dissolution. *See Thomas v. Am. Nat'l Bank*, 704 S.W.2d 321, 324 (Tex. 1986) (holding a single conversation to be *sufficient* evidence of dissolution to preclude summary judgment); *Woodruff*, 558 S.W.2d at 539–40 (holding a letter expressing desire to cease involvement to be *some* evidence supporting a jury finding of dissolution). In fact, the *Woodruff* court, despite finding legally sufficient evidence of dissolution, ultimately overturned the jury finding on factual insufficiency grounds in light of the "overwhelming evidence" that the partner retained her partnership interest. *Id.* at 541–42. While the June 1995 letter might be some evidence that the partnership was dissolved, Buck presented other evidence that creates a genuine issue of material fact as to his intent. That evidence included (1) the settlement agreement signed by Palmer following the venture's litigation with its creditors, which listed Buck as a twenty percent owner, after the alleged dissolution; (2) an amended joint venture agreement, adopted after the alleged dissolution, which also continued to show Buck as an

---

[3] Though the applicable law in this case, the TUPA has since expired. Act of May 9,1961, 57th Leg., R.S. Ch. 158, 1961 Tex. Gen. Laws 289 (formerly TEX. REV. CIV. STAT. ANN. art 6132b), expired January 1, 1999, Act of May 31, 1993, 73rd Leg., R.S., ch. 917, 1993 Tex. Gen. Laws 3887. The Act will be cited simply as "TUPA."

owner; and (3) Buck's own affidavit testimony that he did not intend to dissolve the venture. Based on that evidence, reasonable jurors could differ as to whether Buck intended to dissolve the partnership, merely express a desire to relinquish his interest at a later time, or simply engaged in hyperbole in light of his frustrations with the venture's poor performance. Accordingly, we reverse the court of appeals' judgment.

Buck also contends that the court of appeals erred in holding that the trial court did not abuse its discretion in refusing to grant his motion to disqualify Palmer's counsel based on an alleged conflict of interest due to her association with a law firm that had previously represented Buck and Palmer. We disagree. The court of appeals held that Buck's unexplained seven-month delay in seeking the attorney's disqualification was sufficient to establish waiver. We have held that a delay of even less time waives a motion to disqualify. *Vaughan v. Walther*, 875 S.W 2d 690, 691 (Tex. 1994).

Because Buck produced evidence creating a genuine issue of material fact as to his intent to dissolve the partnership, we hold that the court of appeals erred in affirming summary judgment on that basis. We also hold that the court of appeals did not err in upholding the trial court's denial of Buck's motion to disqualify Palmer's attorney. Accordingly, we reverse the court of appeals' judgment and remand this case to the court of appeals for consideration of the unaddressed summary judgment motion on statute of limitations grounds, as well as for reconsideration of Buck's motion to compel discovery.

**OPINION DELIVERED:** August 31, 2012