**AFFIRMED; Opinion Filed December 13, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-01223-CV

### ZEBA KAMAL AND SYED KAMAL UDDIN AHMED, Appellants
### V.
### MARK A. CASTILLO AND CURTIS CASTILLO PC, Appellees

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-11376**

## MEMORANDUM OPINION

Before Justices Francis, Stoddart, and Schenck
Opinion by Justice Stoddart

Zeba Kamal and Syed Kamal Uddin Ahmed (collectively, the Kamals) sued Mark A. Castillo, their former attorney, for professional negligence and breach of fiduciary duty. The Kamals alleged Castillo's law firm, Curtis Castillo PC (CCPC), was liable for his acts and omissions. The trial court granted appellees' traditional and no evidence motion for summary judgment on these claims. CCPC asserted a breach of contract counterclaim to recover unpaid attorney's fees. Following a bench trial, the court entered judgment in CCPC's favor and awarded monetary damages. In five issues on appeal, the Kamals assert the trial court erred by granting the motion for summary judgment because they raised fact issues on their professional negligence claim and their claim for breach of fiduciary duty was not impermissibly fractured. They also argue the trial court's adverse judgment on the attorney's fees issue is erroneous because there is

no valid contract, CCPC failed to segregate its fees, and the evidence on whether the fees are reasonable is insufficient. We affirm the trial court's judgment.

FACTUAL BACKGROUND

The Kamals hired Castillo and CCPC on February 18, 2013 to represent them in a Chapter 7 bankruptcy case styled *In re Douglas C. Hildinger*, Case No. 13-30304, which was pending in the United States Bankruptcy Court for the Northern District of Texas (Bankruptcy Case), and the adversary proceeding within the Bankruptcy Case styled *Zeba Kamal, et al. v. Douglas C. Hildinger*, Adversary No. 13-3137 (Adversary Proceeding). The Kamals believed they held claims against Hildinger that were exempt from discharge pursuant to 11 U.S.C. § 523.

On June 17, 2013, CCPC, on behalf of the Kamals, filed a Complaint against Douglas C. Hildinger to Determine Dischargeability of Debt pursuant to Section 523(a) of the Bankruptcy Code. The Complaint alleged Hildinger, along with his business partner J. Matthew Holley and Sky Modern Group, LLC, owed the Kamals more than $860,000 in non-dischargeable debt. The following day, CCPC filed Proofs of Claim on behalf of the Kamals. Trial on the Kamals' claims in the Adversary Proceeding began on April 9, 2014. On the second day of trial, the Kamals and Hildinger reached a settlement, agreeing Hildinger would pay $50,000 in borrowed funds to the Kamals. The settlement terms were announced on the record in the bankruptcy court. The following day, the Kamals sought to set aside the settlement, which appellees opposed. The Kamals consented to appellees withdrawing from the representation and, with the bankruptcy court's permission, appellees withdrew as counsel for the Kamals on April 11, 2014.

The Kamals hired another law firm to rescind the settlement agreement. On May 5, 2014, Hildinger filed a motion to enforce the settlement agreement through entry of judgment; the Kamals filed an objection to the motion on the basis that no binding settlement agreement was reached. The bankruptcy court conducted a hearing on the motion, during which Zeba Kamal

–2–

testified she agreed to settle the Adversary Proceeding after she heard comments from the judge indicating Castillo made mistakes during the case that would undermine the Kamals' ability to recover against Hildinger. Zeba testified at the hearing she would not have accepted the settlement had she not believed Castillo made serious errors managing the case, and her belief was based on comments from Bankruptcy Judge Barbara Houser. Judge Houser emphatically stated she "didn't even come close to saying" Castillo made fatal mistakes that devalued the Kamals' lawsuit. Later in the hearing, Judge Houser stated again: "I never said [the Kamals] had no case . . . And I didn't say that [Castillo] made any mistake." On July 11, 2014, the bankruptcy court entered its final judgment enforcing the terms of the settlement agreement.

The Kamals filed this lawsuit on September 17, 2015. Their second amended petition states their claim against Hildinger was based on section 523(a)(2)(A) of the Bankruptcy Code, which excepts from discharge any debt "for money, property, services . . . to the extent obtained by false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The Kamals stated although Hildinger did not make any fraudulent statements to them, he was present when his business partner did so to induce the Kamals to invest money. Thus, they "sought to impute to Mr. Hildinger the fraud of Matthew Holley." They asserted appellees were negligent by failing to pursue an "omissions case" against Hildinger. They also asserted Castillo breached his fiduciary duties to them by failing to honestly communicate his errors and advising them they must settle or receive nothing in the case.

The Kamals engaged John Lewis, an attorney, as an expert witness. Lewis presented two letters constituting his expert report. Lewis opined the Kamals' objection to discharge of their claims against Hildinger had a sufficient and adequate basis in law and fact to enable them to prevail in an adequately and properly prepared and presented case by attorneys representing reasonable and ordinary care, diligence, prudence, and skill. Further, his letter states: "it is more

–3–

likely than not that the Clients' objections to discharge would have been sustained and judgment rendered in favor of Clients but for the errors and omissions of the Law Firm Defendants."

Lewis testified in his deposition that although Castillo pleaded an omission case, he failed to clearly present it at trial and Judge Houser made a mistake in reading or interpreting the Kamals' pleading. He stated: "Judge Houser was incorrect that the pleadings, and specifically the pretrial order, was only an affirmative misrepresentation case . . . she was mistaken when she said that. . . I do find some fault with Mr. Castillo for being so unfamiliar with the matters that he couldn't really turn her around and point her to where she was mistaken." The following exchange occurred in his deposition:

> Q. What is the basis for your opinion that the Kamals' objections to discharge would have been sustained and judgment rendered in their favor but for errors by the lawyers?
> A. I don't think that's what I said in my letter, is it?
> Q. You said, It is more likely than not ---
> A. Okay.
> Q. ---that the client's objections to discharge would have been sustained and judgment rendered in favor of the clients.
> A. Okay. I didn't say - - I don't have an opinion as to how Judge Houser would have ruled. Okay. I believe the facts surrounding the incurrence of the debt and the selling of the securities to Dr. Kamal and her father were more than adequate to sustain an objection to discharge under 523 if they were properly presented, the court understood them and so forth.

Appellees moved for summary judgment on several grounds, including that the Kamals could not prove proximate cause, specifically that absent the alleged breaches of duty, they would have received a better result at trial that would have been collectible against Hildinger or a more favorable settlement. The trial court entered an order granting summary judgment on the Kamals' claims against appellees.

The trial court conducted a bench trial on CCPC's counterclaim for breach of contract, and rendered judgment in favor of CCPC. Subsequently, at the Kamals' request, the trial court entered

findings of fact and conclusions of law. The following facts are taken from the trial court's findings.

CCPC and the Kamals entered into a valid, binding, and integrated contract for legal services (Contract). The Contract provided CCPC would bill the Kamals at the end of each month for time and expenses incurred during the month and payment was due upon receipt of the invoice. Termination of the Contract did not relieve the Kamals from their obligations to pay all outstanding legal fees and expenses in full. The Contract also stated that the "engagement letter and Additional Terms of Engagement reflect [the parties'] entire agreement . . . not subject to any oral agreements or understandings . . . unless in writing signed by both" CCPC and the Kamals.

CCPC performed its obligations pursuant to the terms of the Contract until its withdrawal as the Kamals' attorney of record was authorized. Although CCPC sent invoices for its services, the Kamals failed to pay. As of June 6, 2014, the Kamals owed CCPC a balance of $26,142.98 for legal services and expenses pursuant to the Contract.

After the Kamals filed this lawsuit, appellees retained the law firm Cobb Martinez Woodward PLLC (Cobb Martinez) to represent them on the Kamals' claims. Appellees did not seek recovery for the fees paid to Cobb Martinez.

On October 19, 2015, CCPC filed a counterclaim pursuant to Texas Civil Practice and Remedies Code § 38.001(1) and (8) to recover their fees and expenses incurred under the Contract. CCPC retained Castillo and other lawyers and paraprofessionals at CCPC to collect on the counterclaim. CCPC incurred fees and expenses of $123,458.94 to pursue its counterclaim, and also incurred expert fees. As part of the litigation, CCPC provided an expert report from Castillo who also testified at trial; Castillo detailed the reasonableness and necessity of CCPC's fees and expenses in prosecuting its claims in this case and the fees and expenses incurred by CCPC in the underlying bankruptcy case. The Kamals provided no expert report as to the reasonableness of

CCPC's fees and expenses. However, John Lewis and Zeba Kamal testified about matters related to the Kamals' affirmative defenses of fraud, breach of fiduciary duty, estoppel, and breach of contract. Zeba testified Castillo agreed to waive CCPC's outstanding fees as part of the settlement in the Adversary Proceeding.

The trial court found "CCPC's evidence in support of its claim for breach for contract and attorney's fees [is] of significant probative value" and the "lay testimony of Zeba Kamal was generally self-serving and not credible. The Court accords her testimony little weight." Additionally, Lewis's testimony "was not particularly relevant and was not supported by factual backup in the evidence. . . The Court accords his testimony little weight." The findings state: "The Court found the Kamals' evidence in support of their affirmative defenses, as well as their additional argument at trial of an alleged waiver or release of fees, unconvincing and unpersuasive."

The trial court found, among other things, the time and labor was appropriate and reasonable for the legal services rendered, and the time necessary to perform the required tasks was proportional to the circumstances of the cases. The findings list ways that the Kamals increased the time and labor required for CCPC to pursue its case, including filing three petitions, "linking those claims to their affirmative defenses against CCPC's contractual claims," failing to attend the court-ordered mediation, submitting untimely expert opinions and trial exhibits, and "undertaking other actions specifically calculated to increase the burden placed upon CCPC."

Following the trial, the court found the Kamals failed to pay amounts due and owing to CCPC for legal services and were liable for breach of contract. This appeal followed.

## A. Professional Negligence & Breach of Fiduciary Duty

In their first issue, the Kamals argue the evidence raised a question of fact on causation and collectability, which precluded the trial court from granting summary judgment. We review a trial court's grant of a motion for summary judgment de novo. *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). We review the summary-judgment evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Because the trial court's order does not specify the grounds for granting summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). The party moving for traditional summary judgment must show that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see Mann Frankfort*, 289 S.W.3d at 848.

A legal-malpractice claim is based on negligence, the elements of which are (1) the lawyer owed a duty of care to the client, (2) the lawyer breached that duty, (3) the lawyer's breach proximately caused injury to the client, and (4) damages occurred. *Rogers v. Zanetti*, 517 S.W.3d 123, 128–29 (Tex. App.—Dallas 2015), *aff'd*, 518 S.W.3d 394 (Tex. 2017). Causation also is an element of a client's claim seeking damages as a remedy for a lawyer's breach of fiduciary duty. *Id.* at 136. When a plaintiff claims the attorney's negligence or breach of fiduciary duty caused a bad outcome in prior litigation, the plaintiff must prove that it would have prevailed in the underlying case but for its attorney's negligence. *Id.* at 129, 136. The plaintiff must prove the amount of damages that would have been recoverable and collectible if the other case was properly

prosecuted. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009). This is the "suit-within-a-suit" requirement. *Rogers*, 517 S.W.3d at 129, 136.

Appellees argue summary judgment is appropriate because the Kamals could not prove Castillo's alleged negligence and breach of fiduciary duty proximately caused any injury. The Kamals did not prove that absent Castillo's alleged failures, they would have received a better result that would have been collectible against Hildinger. They assert Lewis's testimony does not show causation because he specifically testified he did not have an opinion about how Judge Houser would have ruled. The Kamals argue the evidence presented by Lewis raised a fact issue on causation.

The evidence the Kamals submitted to prove causation is conclusory. "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex. App.—Dallas 2004, no pet.). An affidavit that is conclusory is not proper summary judgment evidence to be considered on appeal. *See id.* at 451; see *Stryker v. Broemer*, No. 01–09–00317–CV, 2010 WL 4484176, at *5 (Tex. App.—Houston [1st Dist.] Nov. 10, 2010, pet. denied) (mem. op.) (involving legal malpractice claims and stating "[a]ffidavits containing conclusory statements unsupported by facts are not competent summary-judgment evidence" and "[a]n affidavit opposing a summary judgment motion must be factual—conclusions of the affiant lack probative value").

Lewis's letter states the Kamals' objection to discharge of their claims against Hildinger had a sufficient and adequate basis in law and fact to enable them to prevail in an adequately and properly prepared and presented case by attorneys using reasonable and ordinary care, diligence, prudence, and skill. The letter continues: "it is more likely than not that the Clients' objections to discharge would have been sustained and judgment rendered in favor of Clients but for the errors

and omissions of the Law Firm Defendants." Lewis provided no basis to support these statements and, when asked about them during his deposition, he testified: "I don't have an opinion as to how Judge Houser would have ruled." Not only are the statements in Lewis's letter conclusory, but neither his letters nor his testimony show the Kamals would have prevailed in the underlying litigation but for Castillo's alleged negligence. Instead, Lewis readily admits he does not know how Judge Houser would have ruled. Additionally, there is no evidence of the amount of damages that would have been recoverable and collectible but for Castillo's alleged negligence.

We conclude the Kamals did not present a scintilla of competent summary-judgment evidence raising a fact issue concerning the required element of causation. Therefore, we conclude the trial court did not err by granting appellees' motion for summary judgment on this issue. We overrule the Kamals' first issue. Because causation is a required element of both causes of action asserted by the Kamals and there is no evidence raising a fact issue on causation, we need not consider the Kamals' second issue in which they argue their claims were not impermissibly fractured. *See* TEX. R. APP. P. 47.1.

## B. Attorney's Fees

In their third, fourth, and fifth issues, the Kamals challenge the trial court's award of attorney's fees to CCPC.

### 1. *Enforceability of the Contract*

In their third issue, the Kamals ask whether the "absence of a valid, enforceable contract require[s] reversal on the counterclaim." However, the substance of their argument is that enforcing the contractual provision requiring any modification to be in writing against the Kamals is unconscionable. Zeba testified at trial that Castillo told her he would not charge her for legal fees incurred for trial preparation and the trial in the Advocacy Proceeding. However, through their counterclaim, CCPC attempts to collect those fees. Castillo stated he did not agree to waive

CCPC's fees.  On appeal, the Kamals argue that the trial court should have enforced Castillo's oral statement to Zeba even though it was not in writing.  Thus, they assert, the Kamals should not be required to pay the fees CCPC sought to recover via their counterclaim.

The Kamals' argument ignores the trial court's findings of fact. The trial court found CCPC established all elements of its claim for breach of contract, including the existence of a valid contract.  The Contract stated the Kamals would be billed monthly and termination of the Contract did not relieve the Kamals from their obligation to pay outstanding fees and expenses in full. CCPC performed its obligations under the contract.  The trial court found "CCPC's evidence in support of its claim for breach of contract and attorney's fees of significant probative value," but Zeba's testimony "was generally self-serving and not credible."  The court found the Kamals' evidence in support of their affirmative defenses "as well as their additional argument at trial of an alleged waiver or release of fees, unconvincing and unpersuasive."

In a bench trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony.  *Anderton v. Green*, 555 S.W.3d 361, 371 (Tex. App.—Dallas 2018, no pet.).  We are not a fact-finder and may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if the evidence would support a different result.  *Id.*  When the evidence is conflicting, we must presume that the fact-finder resolved the inconsistency in favor of the finding if a reasonable person could do so.  *Id.*

Although the Kamsl assert the trial court erred by enforcing the modification provision in the Contract, the trial court's findings of fact show that is not the conclusion it reached.  The trial court found the Kamals' evidence of waiver or release of fees, including Zeba's testimony, self-serving, not credible, unconvincing, and unpersuasive.  The court also found CCPC established all elements of its claim for breach of contract, including that it performed its contractual obligations. As the sole judge of the credibility of the witnesses and the weight to be given to their testimony,

we presume the trial court resolved the inconsistencies in the evidence in favor of CCPC. *See id.* We overrule the Kamals' third issue.

### 2. *Segregation of Legal Fees*

In their fourth issue, the Kamals argue CCPC failed to segregate their attorney's fees claimed for prosecution of their breach of contract claim from the fees related to defending the Kamals' case against CCPC. The trial court's findings of fact state that, as defendants to the Kamals' lawsuit, appellees retained Cobb Martinez to represent them. Appellees did not seek to recover fees paid to Cobb Martinez and recovery of those fees was not granted in the final judgment. The trial court's findings also state that CCPC retained Castillo, Michael Myers, and other associated attorneys and paraprofessionals at CCPC to collect on CCPC's counterclaim. The fees incurred by CCPC to prosecute its breach of contract claim were the fees awarded by the trial court in the final judgment.

Because CCPC did not attempt to recover the fees it paid to Cobb Martinez to defend the Kamals' legal malpractice suit and only recovered fees incurred to prosecute its breach of contract counterclaim, we conclude CCPC had no responsibility to segregate its fees. *See Anderton*, 555 S.W.3d at 374-75 (discussing segregation of fees). Rather, it recovered fees for prevailing in its breach of contract action, which is authorized pursuant to section 38.001 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE § 38.001. We overrule the Kamals' fourth issue.

### 3. *Reasonableness of Legal Fees*

In their fifth issue, the Kamals assert the evidence is factually insufficient to show CCPC's fees for prosecution of their counterclaim were reasonable or necessary. A party may recover reasonable attorney's fees for a valid breach of contract claim. *See id.* Appellate courts review a trial court's award of attorney's fees under an abuse of discretion standard. *See Anderton*, 555

S.W.3d at 373. Sufficiency of the evidence to support the award is a relevant factor when assessing whether the trial court abused its discretion. *Id.* The Kamals assert there is a complete absence of evidence showing reasonableness under the *Arthur Anderson* factors.

Regarding the reasonableness and necessity of attorney's fees, the factfinder should consider the *Arthur Andersen* factors: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997).

CCPC designated Castillo as its expert on attorney's fees. Castillo's ten-page expert report was admitted as an exhibit at trial. In the report, he discusses each of the *Arthur Andersen* factors in detail, and concludes the fees are reasonable and necessary. Castillo also testified at trial. He explained the legal work attorneys and legal assistants from CCPC performed in the underlying litigation for the Kamals. Billings were made at tenth of an hour intervals, which is standard in bankruptcy practice. The work reflected in CCPC's invoices was what Zeba Kamal requested be performed and approved. At the time Castillo withdrew from representing the Kamals, the outstanding balance of fees owed to CCPC was "[j]ust over $26,000." CCPC sought legal fees of approximately $26,000 for the work that was done for the Kamals in the Adversary Proceeding as well as approximately $100,000 for the effort to collect the $26,000.

Castillo testified the firm incurred $120,000 to collect fees from the Kamals because he charged his "regular rate" instead of the reduced rate he charged the Kamals during the Hildinger case. Additionally, although CCPC asserted a breach of contract counterclaim, the Kamals incorporated arguments relating to causes of action for breach of fiduciary duty, negligence, and fraud, which increased the fees incurred. The Kamals also repeatedly changed their arguments in response to the counterclaim and needlessly increased trial preparation costs. The record includes detailed invoices for the legal fees incurred by CCPC in prosecuting its breach of contract claim.

Castillo testified the amounts charged by CCPC for the legal services provided to the Kamals were pursuant to the Contract and were "more than reasonable due to . . . the discounts, credits, and the reduced hourly rate." He testified his fees are typically approved by every bankruptcy judge in Dallas, Fort Worth, Plano, and Tyler. And the firm billed expenses at their actual costs and without markups. No contradictory evidence was presented.

Based on our review of the entire record, we cannot conclude the trial court abused its discretion by determining the attorney's fees CCPC sought to recover and that were awarded were reasonable and necessary. We overrule the Kamals' fifth issue.

CONCLUSION

We affirm the trial court's judgment.

/Craig Stoddart/
171223F.P05                    CRAIG STODDART
                               JUSTICE

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ZEBA KAMAL AND SYED KAMAL
UDDIN AHMED, Appellants

No. 05-17-01223-CV        V.

MARK A. CASTILLO AND CURTIS
CASTILLO PC, Appellees

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-11376.
Opinion delivered by Justice Stoddart.
Justices Francis and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees Mark A. Castillo and Curtis Castillo PC recover their
costs of this appeal from appellants Zeba Kamal and Syed Kamal Uddin Ahmed.

Judgment entered this 13th day of December, 2018.